**CA 12-16935**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| **DAMOUS D. NETTLES,** | ) | |
| | ) | |
| Petitioner-Appellant, | ) | DC No. 1: CV 11-1201 AWI-JLT |
| | ) | Eastern District of California |
| v. | ) | |
| | ) | |
| **RAUL LOPEZ, Warden,** | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**APPELLANT'S REPLY BRIEF**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

HONORABLE ANTHONY W. ISHII

HEATHER WILLIAMS
Federal Defender
MONICA KNOX
Assistant Federal Defender
801 I Street, Third Floor
Sacramento, California 95814
(916) 498-5700

Attorneys for Petitioner-Appellant
DAMOUS D. NETTLES

# TABLE OF CONTENTS

A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    The Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      1.    Supreme Court Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      2.    Ninth Circuit Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C.    The Relief Possible for Nettles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D.    The State's Asserted Alternative
      Ground for Dismissal of the Petition  . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) . . . . . . . . . . . . . 11

*Blair v. Martel,* 645 F.3d 1151 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . passim

*Butterfiled v. Bail*, 120 F.3d 1023 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 14

*California Department of Corrections v. Morales*, 514 U.S. 499 (1995) . . . . . . . 17

*Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992) . . . . . . . . . . . 10

*County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573 (1989) . . . 7

*Cullen v. Pinholster*, 131 S.Ct. 1388 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Docken v. Chase*, 393 F.3d 1024 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Flores v. Lewis,* 2011 WL 2531240 (ND Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . 14

*Gray v. Beard*, 2013 WL 4782821 (SD Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . 16

*Heck v. Humphrey*, 512 U.S. 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Marsh v. Chambers*, 463 U.S. 783 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Martin v. Tilton*, 430 Fed.Appx. 590 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . 14

*McCollum v. Miller*, 695 F.2d 1044 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . 14

*Murphy v. Department of Corrections*, 2008 WL 111226 (ND Cal. 2008) . . . . . 16

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sandin v. Conner*, 515 U.S. 472 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Skinner v. Switzer*, ___ U.S. ___, 131 S.Ct. 1289 (2011) . . . . . . . . . . . . . . . . . passim

*Thornton v. Brown*, ___ F.3d ___, 2013 WL 7216368 (9th Cir. 2014) . . . . . . . . . . 8

*Town of Greece v. Galloway*, ___ S.Ct. ___, 2014 WL 1757828 (May 5, 2014) . 6, 7

*United States v. Knights*, 534 U.S. 112 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Wolff v. McDonnell*, 418 U.S. 539 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8


**STATE STATUTES**

15 California Code of Regulations
    §2042(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

California Penal Code
    §3041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Penal Code
    §3041.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17


**FEDERAL STATUTES**

Title 42 United States Code
    §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**CA 12-16935**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| **DAMOUS D. NETTLES**, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | DC No. 1: CV 11-1201 AWI-JLT |
| | ) | Eastern District of California |
| v. | ) | |
| | ) | |
| **RAUL LOPEZ, Warden,** | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**APPELLANT'S REPLY BRIEF**

**A. Introduction**

Damous Nettles is serving a term of life with the possibility of parole. His parole is determined by the parole board based on the board's assessment of his current dangerousness; once granted parole, Nettles' term, including good conduct credits, is set by the parole board. Parole board regulations mandate consideration of the prisoner's disciplinary history in deciding whether parole will be granted and whether good conduct credits will be given.

1

It is within that context that Nettles filed habeas actions, first in state court and later in federal court, challenging a 2008 disciplinary finding that he threatened to kill a prison guard. Nettles asserts his innocence of the charge and claims, *inter alia*, that he was found guilty because he was not allowed to put forward his defense and the hearing officer was biased. The federal court dismissed his petition before any litigation on the merits of the claims, finding that the claims could not be litigated in habeas because Nettles could not show that success would likely result in earlier release for him.

The state answers Nettles' claim on appeal that the district court erred in dismissing his petition by arguing that the standard applied by the district court was too lenient and should have required that Nettles establish that success would *necessarily* result in his earlier release. To support that contention, however, the state is twisting Supreme Court cases involving the breadth of claims that can be brought in civil rights actions under 42 U.S.C. §1983 and contending that this court's holdings directly supporting Nettles' argument are "irreconcilable" with the Supreme Court §1983 cases. The state is wrong.

The issue here is an important one for all prisoners who seek to challenge prison disciplinary findings that are sometimes the result of serious constitutional violations and that threaten to hold them in prison much longer than they otherwise would serve.

2

### B. The Governing Law

#### 1. Supreme Court Law

The state commences its argument supporting the dismissal of Nettles' habeas petition by asserting that the Supreme Court has "held" that habeas jurisdiction exists "only" when success on the claims raised would "necessarily" lead to immediate or earlier release for the prisoner. (AB at 6-8.) To support that assertion, the state selectively quotes from three Supreme Court cases;[1] but, as Nettles discussed in his opening brief (AOB at 10-11, fn.6), all the Supreme Court cases involve the limitations of civil rights actions and do not address any limitations of habeas claims.

The state's opening statement is: "Federal habeas jurisdiction is only available when 'a state prisoner is challenging the fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to an immediate or speedier release from imprisonment.' *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973)." (AB at 6.) That is *not* an accurate statement of the discussion or holding in *Preiser.* The full statement made by the Supreme Court makes it clear that the Court was not addressing any limitation on habeas jurisdiction.

> *But we need not in this case explore the appropriate limits*
> *of habeas corpus as an alternative remedy to a proper*

---

[1] The three cases are *Preiser v. Rodriguez*, 411 U.S. 475 (1973), *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and *Skinner v. Switzer*, ___ U.S. ___, 131 S.Ct. 1289 (2011).

3

> *action under §1983. That question is not before us.* What is involved here is the extent to which §1983 is a permissible alternative to the traditional remedy of habeas corpus. Upon that question, we hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

*Preiser*, 411 U.S. at 500 (emphasis added).

Nor did the Court address any limitation on habeas jurisdiction in *Dotson* or *Skinner*, as that issue was not presented in those §1983 cases. The state cites *Dotson*, 544 U.S. at 81-82, as holding that "a habeas petition is not the appropriate remedy when 'success in the action would not necessarily spell immediate or speedier release for the prisoner.'" (AB at 7.) What the Supreme Court said at that point in *Dotson*, after discussing *Preiser, Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Heck v. Humphrey*, 512 U.S. 477 (1994), is:

> These cases, taken together, indicate that a state prisoner's §1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Dotson,* 544 U.S. at 81-82 (emphasis in original).

4

In *Skinner*, 125 S.Ct. 1242, the Supreme Court upheld the use of §1983 for a prisoner's challenge to the state's refusal to allow him access to and DNA testing of biological evidence used against him at trial because such testing (success in his §1983 lawsuit) would not "necessarily imply" the invalidity of his conviction. The majority noted that neither the state nor the dissenting justices had found any case in which the Supreme Court had recognized habeas as the "sole remedy" where the relief sought would not terminate custody or accelerate release. *Id.* at 1299.[2] In a footnote, the Court addressed the state's contention that DNA testing required inquiry into the state's evidence at trial and therefore lie at "the core of the criminal proceeding" and thus should be raised in habeas; in that discussion, the Court noted that *Dotson* held a claim does not lie "at the core of habeas" when it would not "necessarily spell speedier release" and thus "may be brought, if at all, under §1983." *Id.* at fn.13.[3] The citation

---

[2] That statement quite clearly implies that habeas is *a* remedy, at least sometimes, when success would not accelerate release.

[3] It is important to remember that the very basis of *Preiser*'s holding that claims which, if successful, would necessarily invalidate a conviction or accelerate release cannot be brought in §1983 but must be brought in habeas is that Congress created the more-specific habeas act and such claims are the very "core of habeas corpus" and §1983 was not meant to supplant the more specific habeas remedy. *Preiser*, 411 U.S. at 487-89. But *Preiser* itself recognized that the scope of habeas has broadened over time to include claims that are "related to" but do not necessarily come within that "core." *Id.* at 487-88, 499.

Moreover, in discussing why a prisoner with a claim that goes to the "core" of habeas cannot alternatively use §1983 to make his challenge, the Supreme Court has

to *Dotson* is to the passage the state here relies upon and Nettles has discussed in the preceding paragraph, and it does *not* have *any* habeas-limiting language such as "if at all." It would be remarkable to suggest that the Supreme Court was reaching the issue of limitations on habeas issues for the first time in a case that did not raise that issue, by citing to another case that did not raise that issue, all in three words in a footnote.

Even if the footnote language in *Skinner* could reasonably be interpreted as suggesting some limitation on habeas claims, it would be dictum, as the only issue before the Court was whether the claim could be brought in §1983. And given that the dictum relies on a misreading of *Dotson*, it should not be followed here. Indeed, the Supreme Court dealt with this type of issue quite recently in *Town of Greece v. Galloway*, ___ S.Ct. ___, 2014 WL 1757828 (May 5, 2014). The issue presented was whether prayer before a city legislature session had to exclude all Christian reference in order to be allowed under the First Amendment. In 1983, the Court had found no First Amendment violation in the practice of opening a legislative session with a prayer since history showed that such prayers were common at the time the First Amendment was passed. *Marsh v. Chambers*, 463 U.S. 783 (1983). In 1989, the Court found that

---

focused on the fact that such a practice would allow the prisoner to evade the exhaustion requirement of habeas and thus "wholly frustrate" the value Congress put on comity. *Preiser*, 411 U.S. at 489-90. Nettles used the more specific statute and exhausted his state remedies first; thus, he satisfied all the concerns raised in the cases in which the Supreme Court has held limitations on §1983 claims.

a creche placed on the steps of a county courthouse to celebrate Christmas violated the Establishment Clause because it endorsed a patently Christian message; in answering the dissent's charge that such a holding would condemn many traditional practices that recognize the role religion plays in society, the majority "recast" *Marsh* to permit only prayer that contained no overtly Christian references. *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573 (1989). Thus, the plaintiffs in *Galloway* argued that the Court had held all legislative prayer with overtly Christian references violated the First Amendment. *Galloway*, 2014 WL 1757828 *9. The Supreme Court flatly rejected such an approach, both because *Marsh* had not held what *County of Allegheny* asserted it had held and the upholding of prayer that contains no overtly Christian reference does not imply that prayer with overtly Christian reference is constitutionally prohibited. *Id.* at *9-12. *See also United States v. Knights*, 534 U.S. 112, 117-18 (2001) (rejecting the "dubious logic" that an opinion upholding a probation search based on reasonable suspicion implicitly holds that reasonable suspicion is required for a probation search).

*Dotson* did *not* hold what the footnote in *Skinner* claimed it held. And the fact that the Supreme Court has repeatedly held that a prisoner's challenge that, if successful, would necessarily lead to his immediate or accelerated release cannot be brought in §1983 but must be brought in habeas is *not* a holding that *only* such claims

may be brought in habeas.[4]

The Supreme Court has never specifically addressed limitations on habeas claims,[5] and nothing in the cases discussing limitations on §1983 claims puts limitations on habeas claims. That is not to suggest there are no limitations on habeas claims; but whatever they may be, the Supreme Court has noted that both claims that seek either invalidation of the custodial basis or release from custody (the "core" of habeas) *and* claims related to such issues are properly brought on habeas. *Preiser*, 411 U.S. at 487-

---

[4] As Nettles discussed in his opening brief, the contention that the Supreme Court cases discussing limitations on §1983 litigation operate as limitations on habeas is based on an assumption that there is no overlap between the two litigation approaches such that if a claim is properly brought under §1983 it is necessarily improper in habeas. But that is inconsistent with the Supreme Court's recognition that there are "instances where the same constitutional rights might be redressed under either form of relief [habeas or §1983]." *Wolff*, 418 at 579; *see also, Preiser*, 411 U.S. at 499; *Thornton v. Brown*, ___ F.3d ___, 2013 WL 7216368 at *6 (9th Cir. 2014), as amended 2/18/14.

[5] The state argues that *Sandin v. Conner*, 515 U.S. 472 (1995), "provides further support" for its position that Nettles cannot challenge a disciplinary action on habeas. (AB at 11-12.) *Sandin* is also a §1983 case. More important, *Sandin* is a case about what creates a federally-protected liberty interest (*id.* at 474); it held that a disciplinary action that does not result in "atypical, significant" deprivation beyond the ordinary aspects of prison life does not create a liberty interest protected by due process. The prisoner in *Sandin* was suing for damages for a claimed lack of due process at his disciplinary hearing, the result of which was thirty days segregation but no loss of credit *and* the disciplinary record had been expunged from his file, the latter fact being mentioned repeatedly by the Court. *Id.* at 486, 487 and fn.10. Nettles, of course, lost credit and will lose credit when his term is fixed upon parole; and he seeks expungement, a remedy not at issue in *Sandin* since the record had already been expunged.

89, 499.[6]  There can be no question that a disciplinary action which affects the prisoner's credit and *must* be considered by the parole board in deciding parole is related to the potential length of time in custody.

### 2. Ninth Circuit Law

Relying on *Blair v. Martel,* 645 F.3d 1151 (9th Cir. 2011), the state suggests that this circuit has already clearly held that only claims which, if successful, will *necessarily* accelerate a prisoner's release may be brought on habeas. (AB at 7.) Again, the state is wrong.

In *Blair*, a panel of this court considered a habeas case in which the claim was that the prisoner had been denied his right to a "speedy appeal" due to the state's delay in finding counsel for his capital appeal.  The court found that the claim was twofold: a *present* harm in not getting his appeal started and a *future* harm in the delay causing prejudice to obtaining relief on appeal or a fair trial on remand.  *Id.* at 1157.  Since the appeal had gone forward and was resolved by the time this court took up the matter, the court found that the present-harm claim was moot.  It went on, however, to find that the claim had to be brought in a §1983 action and could not be brought on habeas.  In so holding, the panel relied on the footnote in *Skinner*, finding that the Supreme Court has

---

[6] In his opening brief, Nettles provided several examples of the Supreme Court considering on habeas claims that might, but would not necessarily, lead to a prisoner's speedier release.  *See* AOB at 13-14.

"distinguish[e]d between claims that necessarily imply the invalidity of a conviction, which must be brought in the context of a habeas petition, and claims for constitutional violations that do not necessarily spell speedier release and thus do not lie at the core of habeas corpus, which may be brought, if at all, under §1983." *Id.* The *Blair* panel was accurate in only two-thirds of its statement: the Supreme Court has indeed distinguished between those two types of claims and has held that claims that necessarily spell speedier release must be brought in habeas and cannot be brought in a §1983 action. But the *Blair* panel was wrong in its assertion that the Supreme Court had held that *only* claims which necessarily result, if successful, in speedier release can be brought in habeas.[7]

Moreover, any discussion in *Blair* of a "speedy appeal" right being outside the scope of claims that may be brought in habeas is dictum. Before the comments about *Skinner* and the scope of habeas, the *Blair* panel had found that the claim was moot because Blair's appeal was had and completed. Mootness defeats federal court authority, whether in habeas or any other type of litigation, to declare principles or rules of law. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). Thus, nothing said after the mootness ruling has any precedential value. *See Hollingsworth v. Perry*, 133 S.Ct. 2652, 2666 (2013) (finding discussion and holding on issue of

---

[7] As already discussed, *Skinner* cannot be read to be any holding at all on the scope of claims that may be brought in habeas. *See* pp. 5-7, *ante*.

standing in *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), to be dictum because it came after Court had found issue moot).

Of course, the fact that the statement in *Blair* has no precedential value does not make it wrong. What makes it wrong is that *Skinner* did *not* hold that habeas is restricted to claims which would necessarily accelerate the prisoner's release. *See* discussion at pp. 5-7, *ante*. Moreover, *Blair*'s dictum is entirely inconsistent with other cases in this circuit with *holdings* allowing claims that, if successful, have the *potential* of accelerating release to be brought in habeas. *See, e.g., Docken v. Chase*, 393 F.3d 1024 (9th Cir. 2004) (holding a claim which, if successful, *could potentially* affect the duration of confinement is properly brought in habeas); *Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989); *see also* AOB at 12-15.

The state dismisses *Docken*'s clear holding that a claim is properly brought in habeas if success could potentially affect the duration of confinement by saying nothing more than "*Docken* preceded *Dotson* and [*Skinner v.*] *Switzer* and is clearly irreconcilable with those decisions, where the Supreme Court expressly indicated that claims that do not 'necessarily spell speedier release' are not within the core of habeas corpus." (AB at 10.) As discussed, there is no such holding in either *Dotson* or *Skinner*; indeed, the issue of any limitation on what types of claims may be brought in

11

habeas was not presented in either of those cases.[8]  The Supreme Court has never held that only claims that necessarily lead to speedier release may be brought in habeas, so nothing in *Dotson* or *Skinner* is clearly irreconcilable with *Docken*.

### C.  The Relief Possible for Nettles

The state contends that Nettles cannot show that the relief he asks will accelerate his release.[9]  Nettles discussed in his opening brief how the disciplinary action he challenges affects his ability to be considered for parole earlier, to obtain a parole grant, and to get credit against the term the parole board sets for him upon granting him parole.  (AOB at 16-21.)  The state ignores much of that discussion.

The state asserts that any credit loss is irrelevant because Nettles has already reached his minimum eligible parole date so credit does not affect his "sentence." (AB at 8.)  As Nettles has discussed, however, the disciplinary action may not affect his life

---

[8]  And *Blair* does not mention *Docken* or any of the other circuit cases that have held that the likelihood of the effect on the overall length of custody determines the availability of habeas.  *See, e.g., Bostic v. Carlson*, 884 F.2d 1267.  The state would have the court find that *Blair* meant to be overruling settled circuit law without ever even mentioning that law.

[9]  Nettles agrees that if this court were to hold that the standard required for litigating a claim in habeas is that relief will *necessarily* accelerate his release, he cannot satisfy the standard in this matter.  Thus, in discussing the facts of his case, he assumes the court will continue to follow *Docken*'s standard that relief could potentially affect the duration of his confinement or, at least, the standard the district court used of likely to accelerate his release.

sentence but it affects the amount of time he spends in prison. That is so because when he is granted parole, the parole board determines both his term; and the credit he receives to reduce that term and the parole board will not grant credit for any year in which the prisoner received a serious disciplinary action. (AOB at 20-21.) The state does not address that.

Citing *Bostic v. Carlson*, 884 F.2d 1267, the state contends that the disciplinary action must affect Nettles' "eligibility for parole" and, since Nettles has already reached his minimum eligible parole date, the disciplinary can have no effect on his "eligibility for parole." (AB at 9.) That is a restrictive definition of "eligibility for parole," one not supported by the cases.

The state assumes that "eligibility for parole" necessarily means "minimum eligible parole date." But whether a disciplinary action affects a prisoner's "eligibility for parole" could just as likely mean whether it affects his eligibility to actually be paroled under the standard for parole. The standard for parole in California is whether the prisoner is currently dangerous; a prisoner who is found to be currently dangerous is denied parole. Cal. Pen. Code §3041. It is reasonable to accept that a disciplinary action for threatening violence on a prison guard is likely to result in the parole board finding the prisoner remains dangerous. And that has a direct impact on his "eligibility for parole" under the applicable standard for parole.

13

Indeed, *Bostic* itself suggests that is exactly what the court meant when it said that habeas lie for claims that affect a prisoner's "eligibility for parole." The citation *Bostic* gave for that principle was *McCollum v. Miller*, 695 F.2d 1044, 1047 (7th Cir. 1982), a case in which the court discussed an effect on "eligibility for parole" as an effect on the prisoner's chance of obtaining parole when the parole board is allowed to use a disciplinary action as ground to deny parole.[10] *See also Butterfiled v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (finding prisoner could not use §1983 and must use habeas to challenge the use of allegedly false evidence at a parole consideration hearing because such a procedure has an affect on his eligibility for parole and thus on his overall length of custody); *Martin v. Tilton*, 430 Fed.Appx. 590, 591 (9th Cir. 2011)(unpublished) (finding habeas appropriate for challenge to disciplinary action by life prisoner beyond his MEPD because parole board would consider action when determining parole suitability); *Flores v. Lewis*, 2011 WL 2531240 at *3-4 (ND Cal. 2011)(unpublished) (same).

The state repeatedly asserts that it is "entirely speculative" whether the disciplinary action that Nettles challenges will have an impact on whether or when he obtains parole. (AB at 10-12.) The state notes that "rarely will one factor be determinative" in granting or denying parole. (AB at 11.) But, as Nettles has

---

[10] This court recognized that very interpretation given "eligibility for parole" by *Bostic* in *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003).

explained, while the standard for granting parole is fixed, it still allows a considerable degree of discretion and a balancing of all the relevant factors and evidence. It is not in any way speculative to conclude that a parole board trying to make a determination about Nettles' dangerousness is going to weigh heavily in the balance evidence that he threatened to kill a prison guard or that it is likely that a balancing without that evidence is much more likely to balance in Nettles' favor.[11]

It is important to understand that the import of the state's argument that Nettles is unlikely to accelerate his release by obtaining habeas relief expunging the 2008 disciplinary action is that the federal court can, indeed must upon a motion to dismiss, weigh the evidence relevant to Nettles' parole suitability, with and without the challenged disciplinary action. It is the role of the parole board, not the federal court, to balance the relevant evidence and determine Nettles' parole suitability. While it is appropriate for the federal court to consider whether, in general, the expungement of a disciplinary action could alter a parole board's suitability determination, it would be entirely inappropriate for the federal court to prevent a prisoner from even litigating

---

[11] The state, of course, repeatedly calls attention to the number of disciplinary actions Nettles has had over the years, but even the state recognizes that in recent years both the number and severity of the disciplinary actions have been significantly reduced. That is important because the standard for parole is *current* dangerousness. And that is exactly what makes the challenged disciplinary so damaging to Nettles' quest for parole: if he were able to expunge the 2008 threat disciplinary, Nettles would take to the Board today over fifteen years free of any actions relating to drugs or violence. (AOB at 17-18.)

serious constitutional claims because the court itself did not think the particular petitioner would be suitable even without consideration of the challenged action. Court have repeatedly allowed habeas challenges to disciplinary or other actions that could affect a parole suitability decision by board without assessing whether that was likely in the particular petitioner's case. *See, e.g. Gray v. Beard*, 2013 WL 4782821 at *3-5 (SD Cal. 2013)(unpublished) (finding habeas appropriate for challenge to designation of prisoner as gang member because expungement of the designation could have impact on parole suitability without any consideration of whether the petitioner was likely to obtain parole grant if designation expunged); *Murphy v. Department of Corrections*, 2008 WL 111226 at *5-7 (ND Cal. 2008) (unpublished) (discussing circuit caselaw and finding habeas appropriate for habeas seeking expungement of disciplinary action because disciplinary violation "is precisely the sort of relevant information that [15 C.C.R.] section 2402(b) requires parole boards to consider); *see also* cases cited at p. 14, *ante*.

Finally, the state contends that Nettles' argument that expungement would, in all probability, allow him to get to his next parole consideration hearing before 2019 and perhaps obtain a grant of parole is insufficient to allow a habeas challenge because such a scenario is "far too attenuated to confer habeas jurisdiction." (AB at 12-13.) The state's argument, however, is entirely inconsistent with allowing habeas for prisoners

to challenge the deferrals between parole consideration. *See California Department of Corrections v. Morales*, 514 U.S. 499 (1995) (the Supreme Court entertained a prisoner's habeas challenge to a change in law lengthening deferral periods between parole consideration hearings despite a specific recognition of the unlikelihood that the petitioner would be granted parole at an earlier hearing because he had multiple murder convictions).

As Nettles has noted (AOB at 19-20), he can obtain an advanced hearing with a change in circumstances, and expungement of a serious disciplinary action for threatening a prison guard would be a significant change in circumstances. That is not speculation - it is exactly what the statute call for. Cal. Pen. Code §3041.5

### D. The State's Asserted Alternative Ground for Dismissal of the Petition

The state argues that this court should uphold the district court's dismissal of Nettles' petition on a ground not considered by the district court. Thus, the state contends that Nettles' petition was properly dismissed by the district court because he did not attach to either his state petition or his federal petition evidence of the hearing officer's findings, including the evidence relied upon to find Nettles guilty of the disciplinary charge. The sole basis of the state's contention is the assertion, unsupported by any citation, that "a court's resolution of Nettles's claims requires a complete copy of the challenged CDC 115 prison disciplinary." (AB at 14.)

17

There can be no question that Nettles filed, in both state and federal court, very specific allegations of due process violations in the disciplinary process that led to his punishments, from start (false report) to finish (administrative appeal) and at all points in between (refusal to investigate, biased hearing officer, denial of right to present evidence). His state and federal petitions were lengthy and detailed, including dates of all relevant events, log numbers for all filings by prison staff, names and ranks of all staff involved in the alleged violations; he included many exhibits[12] as well as his declaration, under penalty of perjury, attesting to the events. *See* CR 1, 3, 7, 27, 28. Nothing under either state or federal law requires more; certainly, the state has not cited any authority suggesting it does.[13]

Nettles' petition was dismissed before any proceedings on it were held. It is possible that litigation on the petition will reveal that prevailing requires a critical piece of evidence never presented, in any way, to the state courts; and the state will have its

---

[12] The exhibits include documentation of the charges, the finding of guilt and the punishment assessed. *See* CR 27-2 at pp. 9-11, 34.

[13] It is unclear, and the state never explains, why the exact evidence relied upon by the hearing officer would be so critical to a resolution of claims relating to failure to allow Nettles to put on his defense and a biased hearing officer; certainly, the state is not suggesting that because the hearing officer cited to sufficient evidence to find Nettles guilty of the charge, it does not matter that Nettles was denied his right to put on his defense or that the hearing officer was biased. Nettles does not allege that the evidence was insufficient to find him guilty, only that the process was so lacking in due process that the result of the hearing cannot stand.

chance to weigh in on the legal meaning of that.[14]  But nothing about the AEDPA or

*Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), allows (let alone requires) a district court

to dismiss a petition before any proceedings on the merits of the petition simply because

a piece of evidence the state believes is important has not been included in the filing.[15]

Only litigation on the merits will determine what evidence is critical to proving

petitioner's claims.

---

[14]  The potential legal meaning if it turns out that Nettles did not present a critical piece of evidence to the state court is not at all clear in this case.   When Nettles filed his petition in the California Supreme Court, he also filed a "motion to augment" the record with exhibits he was unable to attach to his petition because, he alleged, prison officials had interfered in his ability to obtain copies of them. (*See* CR 7-2.)

[15]  A district court has the authority to dismiss a petition because settled Supreme Court law would not legally support petitioner's legal argument for relief or the allegations, even if proven, would not support relief.  But the state does not contend either of those situations exist here.  It is simply contending that a piece of evidence it deems critical has not been submitted; that is a matter for litigation, not a ground for dismissal at this stage.

19

## CONCLUSION

For the foregoing reasons, as well as those set forth in his opening brief, Damous Nettles requests this Court to find that his claim is cognizable on habeas and remand to the district court for further proceedings on the merits of his claim.


Dated: May 27, 2014                              Respectfully submitted,

                                                 HEATHER WILLIAMS
                                                 Federal Defender

                                                 /s/ *Monica Knox*
                                                 MONICA KNOX
                                                 Assistant Federal Defender

                                                 Attorneys for Appellant

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed.R.App 32(a)(7)(C) and Circuit Rule 32-1, I certify that this brief

is proportionally spaced, has a typeface of 14 points or more, and has 4,981 words.


DATED: May 27, 2014                    /s/   *Monica Knox*
                                       MONICA KNOX
                                       Assistant Federal Defender

21

**CA 12-16935**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| **DAMOUS D. NETTLES**, | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| Petitioner-Appellant, | ) | DC No. 1: CV 11-1201 AWI-JLT |
| | ) | Eastern District of California |
| v. | ) | |
| | ) | |
| **RAUL LOPEZ, Warden,** | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

I, the undersigned, hereby certify that on May 27, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:        May 27, 2014

/s/ George K. Ernestberg, III
GEORGE K. ERNESTBERG, III

22