**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAMOUS D. NETTLES,<br>*Petitioner-Appellant*,<br><br>v.<br><br>RANDY GROUNDS, Warden,<br>*Respondent-Appellee*. | No. 12-16935<br><br>D.C. No.<br>1:11-cv-01201-<br>AWI-JLT |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

| | |
|---|---|
| MATTA JUAN SANTOS,<br>*Petitioner-Appellant*,<br><br>v.<br><br>K. HOLLAND and JEFFREY BEARD,<br>*Respondents-Appellees*. | No. 13-15050<br><br>D.C. No.<br>1:12-cv-01651-<br>LJO-GSA<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
October 6, 2014—San Francisco, California

2                    NETTLES V. GROUNDS

Filed May 28, 2015

Before: Sandra S. Ikuta, N. Randy Smith,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Ikuta;
Partial Concurrence and Partial Dissent by Judge Murguia

## SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's dismissal of California state prisoner Damous Nettles's habeas corpus petition seeking expungement of a prison rules violation report and restoration of thirty days of post-conviction credit; and reversed the district court's dismissal of California state prisoner Matta Juan Santos's habeas corpus petition claiming that the process by which the prison validated his gang involvement violated his due process rights and seeking release from his resulting confinement in the security housing unit.

Applying *Skinner v. Switzer*, 131 S. Ct. 1289 (2011), the panel held that a claim challenging prison disciplinary proceedings is cognizable in habeas only if it will "necessarily spell speedier release" from custody, meaning that the relief sought will either terminate custody, accelerate the future date of release from custody, or reduce the level of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

custody; and that to the extent this court's prior decisions held that a claim is cognizable in habeas if success on the claim is likely to, or has the mere potential to, affect the length of a petitioner's confinement, they are overruled as irreconcilable with *Skinner.*

The panel held that because neither the expungement of the rules violation report nor restoration of the lost good-time credits would necessarily accelerate the future date of Nettles's release from custody, his claim is not cognizable under the habeas statute.

The panel wrote that it remains bound by the determination in *Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989), that there is habeas jurisdiction over a claim that would result in release from disciplinary segregation to the general prison population. The panel therefore held that the district court erred in dismissing Santos's petition that seeks a remedy – expungement of the gang validation and release from the security housing unit to the general population – that can fairly be described as a quantum change in the level of custody. The panel remanded for further proceedings on the merits of Santos's claim.

Judge Murguia concurred in part and dissented in part. She disagreed with the majority that a footnote of dicta in *Skinner* defines the scope of habeas jurisdiction and abrogates the decisions in *Bostic* (habeas jurisdiction is proper when a prisoner seeks expungement of a disciplinary finding if "expungement is likely to accelerate the prisoner's eligibility for parole"), and *Docken v. Chase*, 393 F.3d 1024 (9th Cir. 2004) (habeas jurisdiction is proper when a prisoner's challenge to parole procedures "*could* potentially affect the duration of . . . confinement"). She would reverse and

4            NETTLES V. GROUNDS

remand in both cases because Santos and Nettles have each asserted a cognizable habeas claim under the law of this circuit.

## COUNSEL

Monica Knox (argued), Assistant Federal Defender; Heather Williams, Federal Defender, Sacramento, California, for Petitioner-Appellant Damous D. Nettles.

Peggy Sasso (argued), Assistant Federal Defender; Heather Williams, Federal Defender, Fresno, California, for Petitioner-Appellant Matta Juan Santos.

Andrew R. Woodrow (argued), Deputy Attorney General; Kamala D. Harris, Attorney General of California; Jennifer A. Neill, Senior Assistant Attorney General; Phillip J. Lindsay, Supervising Deputy Attorney General, Sacramento, California, for Respondent-Appellee Randy Grounds, Warden.

Amy Daniel (argued), Deputy Attorney General; Kamala D. Harris, Attorney General of California; Jennifer A. Neill, Senior Assistant Attorney General; Jessica N. Blonien, Supervising Deputy Attorney General, Sacramento, California, for Respondents-Appellees K. Holland and Jeffrey Beard.

**OPINION**

IKUTA, Circuit Judge:

The two appeals consolidated in this opinion require us to identify the appropriate standard for determining whether a claim is cognizable under the federal habeas statute.[1] Applying *Skinner v. Switzer*, we conclude that a claim challenging prison disciplinary proceedings is cognizable in habeas only if it will "*necessarily* spell speedier release" from custody, meaning that the relief sought will either terminate custody, accelerate the future date of release from custody, or reduce the level of custody. 131 S. Ct. 1289, 1299 n.13 (2011) (emphasis added) (internal quotation marks omitted) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia, J., concurring)). To the extent our prior decisions held that a claim is cognizable in habeas if success on the claim is likely to, or has the mere potential to, affect the length of a petitioner's confinement, they are overruled as irreconcilable with *Skinner. See Blair v. Martel*, 645 F.3d 1151, 1157 (9th Cir. 2011).

I

Damous Nettles and Matta Juan Santos, both prisoners in California state prisons, appeal the district court's dismissal of their habeas petitions.

A

In 1990, Nettles was convicted in California of attempted first degree murder with use of a firearm, and other offenses.

---

[1] These appeals are ordered consolidated for purposes of this disposition.

6                    NETTLES V. GROUNDS

The victim was a woman who had filed a complaint against Nettles's brother.  In order to prevent her from testifying, Nettles took the victim down an alley, ordered her onto her hands and knees, and told her "You're not going to testify against my brother.  I'm going to kill you."  Nettles then shot her twice in the left ear and left her in the alley.  The victim did not die, but was seriously injured and disfigured.

Nettles was sentenced to prison for a determinate term of twelve years and a life term with the possibility of parole for his convictions for attempted murder and dissuading and conspiring to dissuade a witness from attending or giving testimony at trial.  His minimum eligible parole date was October 19, 2005.  An initial parole consideration hearing was held in 2004.  Before that hearing, prison staff had issued some thirty-nine rules violations reports (CDC Form 115) to Nettles.  These reports are issued for misconduct that "is believed to be a violation of law or is not minor in nature." Cal. Code Regs. tit. 15, § 3312(a)(3).  He also received numerous citations for lesser types of misconduct.  *See id.* § 3312(a)(2) (noting that "documentation of minor misconduct" should be "documented on a CDC Form 128-A").  At his initial parole hearing in 2004, the Board of Prison Terms (now the Board of Parole Hearings, or Board)[2] deemed Nettles to be unsuitable for parole and declined to set a parole date.  It scheduled the next parole suitability hearing for 2006, but the date was postponed several times.

After 2004, Nettles received seven additional rules violations reports.  On February 26, 2008, staff issued Nettles

---

[2] At the time of the hearing, the Board was referred to as the Board of Prison Terms.  This entity was replaced by the Board of Parole Hearings in 2005.  *See* Cal. Gov't Code § 12838.4.

NETTLES V. GROUNDS                        7

a rules violation report for threatening to stab a corrections officer. After an investigation of the incident and a hearing, Nettles was found guilty, and given a four-month term in the segregated housing unit. He also lost thirty days of post-conviction credit.

On July 30, 2009, the Board convened a second parole suitability hearing for Nettles. At the hearing, the presiding commissioner first described the facts of Nettles's crime, characterizing it as "one of the most atrocious and cruel acts I've read" and stating that Nettles's motive was "ridiculously heinous."

The commissioner then reviewed Nettles's prior criminal history. Nettles had a long string of convictions beginning at age seventeen, and had been in and out of prison for offenses including possession of drugs, assault with a deadly weapon, battery on a peace officer, and robbery. Nettles was on parole for the robbery conviction when he committed the attempted murder for which he was sentenced to life imprisonment. The commissioner stated that Nettles's lengthy criminal history illustrated his inability to learn from prior imprisonments.

The commissioner next explained the hearing panel's concerns about Nettles's mental state and attitude about the crime. In the hearing panel's view, Nettles's letter to the victim did not express true remorse. Further, Nettles had not taken responsibility for his conduct and lacked insight that would enable him to change his behavior. The commissioner discussed a May 2007 psychological report, which gave Nettles "a rating of overall moderate likelihood to become involved in a violent offense if released." Finally, the commissioner stated that Nettles was argumentative and

stubborn, "challenge[d] authority at every given opportunity" and refused to restrain himself, as evidenced by his numerous rules violations. The commissioner noted the forty-six rules violation reports that had been issued to Nettles while he was in prison. Nettles "continued to display negative behavior while incarcerated," and as a result was placed in segregated housing. Moreover, Nettles had not taken any significant steps to gain skills to function outside of prison. Nevertheless, the commissioner noted some positive steps Nettles had taken, including a slight reduction in the number of rules violations reports issued to Nettles in recent years.

The hearing panel concluded that Nettles was unsuitable for parole because he "still pose[d] an unreasonable risk of danger if released from prison." This finding was "based on weighing the considerations provided in the California Code of Regulations." As authorized by the regulations, *id.* § 2306, the commissioner made recommendations regarding "what steps may be undertaken to enhance the possibility of a grant of parole at a future hearing," *id.* § 2304, telling Nettles that "[f]or next time, you certainly need to become and remain disciplinary free."

On January 23, 2009, Nettles filed a habeas petition in the Superior Court of California claiming, in relevant part, that the 2008 rules violation report was illegal, and that the disciplinary proceedings held in connection with the 2008 rules violation report violated his due process rights. The Superior Court denied the petition, concluding that Nettles failed to exhaust his administrative remedies concerning these

claims.[3]   The California Court of Appeal and California Supreme Court then summarily denied the petition.

On June 10, 2011, Nettles filed a habeas petition in federal court seeking, among other things, "restoration of good time," presumably referring to the loss of thirty days of post-conviction credits as a result of the 2008 disciplinary decision, and expungement of the February 26, 2008 rules violation report.  After being ordered to respond, the state moved to dismiss the petition, arguing that the court lacked jurisdiction to entertain the petition because the 2008 disciplinary decision did not impact the fact or duration of Nettles's confinement.  Nettles opposed the motion, arguing that the disciplinary decision impacted the duration of his confinement because it delayed his parole hearing and constituted grounds for future denial of parole.

The district court dismissed Nettles's petition, holding that he could not show that expungement of the 2008 rules violation report was likely to accelerate his eligibility for parole.  Nettles timely appealed the district court's decision.

B

Santos was convicted in 1996 under California Penal Code section 209(a) for participating in a kidnap-for-ransom scheme.  He was sentenced to a term of life in prison with the possibility of parole plus nine years.

---

[3] As the state acknowledges, it did not argue to the district court that Nettles's claim was procedurally barred.  Nor does the state raise this issue on appeal.  Therefore, we do not address it.

10          NETTLES V. GROUNDS

After prison investigators verified allegations that Santos was a currently active member of the Mexican Mafia, a prison official validated the gang-involvement determination on February 10, 2011. *See* Cal. Code Regs. tit. 15, § 3378. As a result of this gang validation, Santos was removed from the general prison population and confined in the security housing unit (SHU) indefinitely.

Santos claims that the SHU is a "prison within a prison where prisoner[s] are denied virtually all privileges." According to Santos, prisoners placed in the SHU spend approximately twenty-two hours per day in their cells, receive all meals in their cells, are denied contact visits and phone access, and are not allowed to participate in training or education activities. Additionally, a prisoner is ineligible to earn post-conviction credits under California Penal Code section 2933(b) or program credit reductions under California Penal Code section 2933.05 during the time the prisoner is placed in the SHU. Cal. Penal Code § 2933.6.

Santos administratively appealed his gang validation. After his third and final administrative appeal was denied, Santos filed a petition for a writ of habeas corpus in the Superior Court of California arguing, among other things, that the allegations of his gang involvement were false, and that there was no evidence supporting the gang validation. Santos demanded that the prison expunge the gang validation from his file and release him to the general prison population. The Superior Court denied Santos's petition, finding that sufficient evidence supported the gang validation. The California Court of Appeal and California Supreme Court summarily denied the petition.

NETTLES V. GROUNDS 11

On October 9, 2012, Santos filed a petition for a writ of habeas corpus in federal court, arguing that the gang validation violated his due process rights because it was "based on false, unreliable and insufficient information." He sought release from the SHU. The district court dismissed the petition on the ground that Santos's claims were not cognizable under the federal habeas statute, as they concerned the conditions, rather than the fact or duration, of his confinement. Santos timely appealed the district court's decision.

II

We review de novo a district court's decision to deny a petition for habeas corpus. *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010). We also review de novo a district court's determination that it does not have jurisdiction over a habeas corpus petition. *Id.*

Both Nettles's and Santos's appeals require us to determine when we lack jurisdiction over a claim raised in a habeas petition. By statute, federal courts must "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also* 28 U.S.C. § 2241(c)(3). According to the Supreme Court, this language, as well as "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

12          NETTLES V. GROUNDS

In the leading case of *Preiser*, the Court considered whether prisoners who had lost good-time credits as a result of disciplinary proceedings could bring an action under 42 U.S.C. § 1983[4] for restoration of the credits on the ground that the proceedings violated their due process rights, or whether they were limited to bringing a habeas petition. *Id.* at 476–77. The prisoners would have been entitled to immediate release from prison if their good-time credits had been restored. *Id.*

Because analyzing this issue required an inquiry into the respective spheres of habeas and civil rights actions, the Court first gave federal courts guidance as to what types of cases sounded in habeas. According to the Court, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500. The Court noted that the scope of habeas had evolved over the years. *Id.* at 485. A person is deemed to be "in custody" for purposes of habeas when a person is subject to parole, *id*. at 486 n.7 (citing *Jones v. Cunningham*, 371 U.S. 236 (1963)), or even when the person is released on bail or on the person's own recognizance, *id.* (citing *Hensley v. Municipal Court*, 411 U.S. 345 (1973)). In addition, a prisoner is deemed to be seeking "release" from custody even when the prisoner will not gain freedom, but will be released into a different form of

---

[4] Section 1983 provides that: "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

NETTLES V. GROUNDS                    13

custody. *See id.* at 486 (stating that the writ of habeas corpus is available to obtain release from the wrong institution to the correct institution) (citing *Humphrey v. Cady*, 405 U.S. 504 (1972) and *In re Bonner*, 151 U.S. 242 (1894)). Finally, "the federal habeas corpus statute does not deny the federal courts power to fashion appropriate relief other than immediate release." *Id.* at 487 (internal quotation marks omitted). For instance, prisoners can challenge an unlawful loss of good-time credits even if restoration of such credits "merely shortened the length of their confinement, rather than required immediate discharge from that confinement." *Id.*

Turning next to the appropriate scope of § 1983, the Court ruled that where prisoners challenged the fact or duration of their imprisonment, and sought immediate or speedier release from that imprisonment, they were precluded from bringing that challenge in a civil rights action under § 1983. *Id.* at 500. The Court reasoned that although "the literal terms of § 1983 might seem to cover" claims that a prisoner's confinement violated the Constitution, *id.* at 489, there was, as the Court later put it, "an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus,'" *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (quoting *Preiser*, 411 U.S. at 487). Because Congress passed the more specific habeas statute, requiring exhaustion of state remedies, to cover state prisoners' constitutional challenges to their convictions and sentences, any prisoner complaint lying at "the core of habeas corpus" had to be brought by means of a habeas petition, not under § 1983. *Preiser*, 411 U.S. at 489–90.[5]

---

[5] *Heck v. Humphrey* further limited the scope of § 1983, holding that claims for damages that necessarily imply the invalidity of a conviction or sentence are cognizable under § 1983 only if the plaintiff proves that the

14                    NETTLES V. GROUNDS

The Court then examined the prisoners' claims in light of these rulings.  Because the prisoners in *Preiser* brought a challenge seeking relief that would result in immediate release from prison, their claims "fell squarely within [the] traditional scope of habeas corpus." *Id.* at 487.  Because the claims were "within the core of habeas corpus," that was the prisoners' exclusive remedy, and they were precluded from bringing the action under § 1983. *Id.* at 487–88, 500.

Although *Preiser* helps delineate the core of habeas, it did not delineate the outer limits of habeas jurisdiction, the question before us here.  Indeed, *Preiser* held this issue open, stating that "we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983." *Id.* at 500.

We addressed this issue in cases following *Preiser*, and made clear that habeas jurisdiction was available only for claims that had some nexus to shortening the length of confinement.  We did not, however, fully delineate the contours of this nexus.  In *Crawford v. Bell*, we held that habeas did not extend to challenges to the "terms and conditions" of a prisoner's incarceration, where the appropriate remedy would not include "release from confinement."  599 F.2d 890, 891–92 (9th Cir. 1979).  In *Bostic v. Carlson*, we held that a prisoner could bring a petition in habeas to seek relief from various disciplinary

---

conviction or sentence has been reversed, expunged, or declared invalid. 512 U.S. 477, 486–87 (1994).  In establishing this "favorable termination" rule, the Court reasoned that the sort of action described in *Heck* is most closely analogous to the common-law cause of action for malicious prosecution, which requires "termination of the prior criminal proceeding in favor of the accused." *Id.* at 484.

NETTLES V. GROUNDS                    15

decisions that resulted in "forfeiture of statutory good time or segregation from the general prison population," where the relief was for "expungement of the incident from his disciplinary record" so long as such "expungement is likely to accelerate the prisoner's eligibility for parole." 884 F.2d 1267, 1269 (9th Cir. 1989). In *Ramirez v. Galaza*, we stated that a prisoner could not bring a habeas petition to seek expungement of a disciplinary charge where "a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." 334 F.3d 850, 859 (9th Cir. 2003). In *Docken v. Chase*, we held that prisoners could bring claims in a habeas petition "challenging aspects of their parole review" so long as success on the claims "could potentially affect the duration of their confinement." 393 F.3d 1024, 1031 (9th Cir. 2004) (emphasis omitted). These cases together establish that habeas jurisdiction is available only for claims that, if successful, would have some shortening effect on the length of a person's custody. We have not made clear, however, whether a claim has to necessarily, likely, or merely potentially accelerate release from confinement to be cognizable in habeas.

In *Skinner v. Switzer*, the Supreme Court again confronted the question, "[w]hen may a state prisoner, complaining of unconstitutional state action, pursue a civil rights claim under § 1983, and when is habeas corpus the prisoner's sole remedy?" *Skinner*, 131 S. Ct. at 1298. In *Skinner*, the Court considered a prisoner's lawsuit against a Texas district attorney for failing to provide DNA testing the prisoner requested. *Id.* at 1295. The Court concluded that the prisoner could assert that claim in an action under § 1983 rather than in a petition for a writ of habeas corpus because a judgment that simply orders DNA tests will not *necessarily* imply the

16                    NETTLES V. GROUNDS

unlawfulness of the state's custody or spell speedier release.
*Id.* at 1293.**⁶**

In reaching this conclusion, *Skinner* relied on *Wilkinson
v. Dotson*, an earlier Supreme Court decision holding that
prisoners could challenge the retroactive application of parole
guidelines under § 1983 because their claims did not lie at the
"core of habeas corpus." *Dotson*, 544 U.S. at 82 (internal
quotation marks omitted). *Skinner* explained that "*Dotson*
declared . . . in no uncertain terms, that when a prisoner's
claim would not 'necessarily spell speedier release,' that
claim does not lie at 'the core of habeas corpus,' and may be
brought, *if at all*, under § 1983." *Skinner*, 131 S. Ct. at 1299
n.13 (emphasis added). Citing Justice Scalia's concurrence
in *Dotson*, *Skinner* indicated that the Court had never
"recognized habeas as the sole remedy, *or even an available
one*, where the relief sought would 'neither terminat[e]
custody, accelerat[e] the future date of release from custody,
nor reduc[e] the level of custody.'" *Id.* at 1299 (emphasis
added) (quoting *Dotson*, 544 U.S. at 86 (Scalia, J.,
concurring)). Accordingly, *Skinner* adopted the line between

---

**⁶** The Court previously indicated that a claim that does not imply the
invalidity of the underlying conviction or "necessarily" affect the duration
of time to be served, is not a claim on which habeas relief can be granted.
*Muhammad v. Close*, 540 U.S. 749, 754–55 (2004) (per curiam). In
*Close*, the Supreme Court limited the applicability of *Heck* by holding that
its favorable termination requirement was not applicable, and the prisoner
could bring a § 1983 claim, when the prisoner challenged administrative
determinations that did not "raise any implication about the validity of the
underlying conviction" or "necessarily" affect "the duration of time to be
served," because such a challenge "raised no claim on which habeas relief
could have been granted on any recognized theory." *Id.*

NETTLES V. GROUNDS                    17

§ 1983 claims and habeas actions that it discerned in *Dotson*. *Id*.[7]

Applying *Skinner*'s ruling on the outer limits of habeas jurisdiction, we stated that federal courts lack habeas jurisdiction to consider claims for constitutional violations that do not necessarily spell speedier release. *See Blair*, 645 F.3d at 1157. In *Blair*, we considered whether a state prisoner could bring a habeas petition claiming that the California Supreme Court's delay in processing his direct appeal deprived him of due process. *Id.* We dismissed this claim, in part because we lacked habeas jurisdiction. *Id.* at 1157–58. We explained that *Dotson* and *Skinner* "distinguish between claims that necessarily imply the invalidity of a conviction," which must be brought in a habeas petition, and "claims for constitutional violations that do not necessarily spell speedier release and thus do not lie at the core of habeas corpus, which may be brought, if at all, under § 1983." *Id.* at 1157. Because the prisoner's claim did not challenge the validity of his conviction or "necessarily spell speedier

---

[7] The dissent argues that we are not bound by *Skinner*'s distinction between claims that may be brought in a habeas action and those that may be brought in a § 1983 claim because *Skinner*'s interpretation of *Dotson* is wrong. But, of course, we are bound by the Supreme Court's statements and its characterization of its own precedent, regardless whether we believe our interpretation of its precedents is superior. *Cf. Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

18                    NETTLES V. GROUNDS

release," we concluded that it "belongs in a § 1983 complaint, not a habeas petition." *Id.* at 1157–58; *see also Griffin v. Gomez*, 741 F.3d 10, 17 & n.15 (9th Cir. 2014) ("Though we had held that [an order requiring a change in conditions of confinement] could issue on a habeas petition, the Supreme Court [in *Skinner*, 131 S. Ct. at 1299 n.13] has since held otherwise."). *But see Thornton v. Brown*, 757 F.3d 834, 841 & n.4 (9th Cir. 2013) (stating in passing that § 1983 and habeas may provide alternative means to challenge prison conditions, and noting parenthetically that *Skinner* raised, but did not decide "the question whether 'habeas [is] the sole remedy, or even an available one,' for certain types of claims (quoting *Skinner*, 131 S. Ct. at 1299) (alteration in original)).

We now reaffirm our statements in *Blair* and *Griffin*, and hold that we are bound by the Court's express statement in *Skinner* that relief is available to a prisoner under the federal habeas statute only if success on the claim would "necessarily spell speedier release" from custody, which *Skinner* suggested would include termination of custody, acceleration of the future date of release from custody, or reduction of the level of custody. *See Skinner*, 131 S. Ct. at 1299 & n.13.**[8]** This conclusion is not only consistent with the plain language of *Skinner* and our own previous interpretations of that case, it is also consistent with the Court's precedents and the common law history of the writ. *See Preiser*, 411 U.S. at 484–86; *Dotson*, 544 U.S. at 85–87 (Scalia, J., concurring); *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004) (per curiam) (holding that a prisoner "raised no claim on which habeas relief could have been granted on any recognized

_____

**[8]** The dissent complains that our reading of *Skinner* is "strained," but our interpretation is consistent with the interpretation adopted by two prior panels. *See Blair*, 645 F.3d at 1157–58; *Griffin*, 741 F.3d at 17 & n.15.

theory" where the administrative determinations he challenged neither raised an implication about the validity of the underlying conviction nor necessarily affected the duration of time to be served). Accordingly, we conclude that under *Skinner*, in cases involving challenges to prison disciplinary proceedings, the writ of habeas corpus extends only to claims that, if successful, will "*necessarily* spell speedier release." *See Skinner*, 131 S. Ct. at 1299 n.13 (emphasis added). To the extent our cases have indicated that the writ of habeas corpus may extend to claims that, if successful, would merely be likely to or have the potential to lead to a speedier release, they are superceded by the Supreme Court's rulings. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) ("[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled."). Prisoners seeking to bring other challenges to prison conditions may have recourse to § 1983, which allows them to bring claims without exhausting state remedies or facing the highly deferential standard of review applicable to habeas claims.[9]

---

[9] The clarity provided by *Skinner*'s distinction between habeas and § 1983 actions not only provides guidance to prisoners regarding the correct form of action for their claims, but also resolves much of the understandable confusion of prison officials regarding which prisoner claims are cognizable in habeas. In these appeals, for instance, the state argued in favor of interpreting *Skinner* as precluding habeas petitions for claims that do not lie at the core of habeas, even though such a rule channels prisoner claims towards the more flexible § 1983 cause of action. In *Skinner* itself, by contrast, the state took the opposite position, urging that an action raising a due process claim relating to DNA testing was at

20  NETTLES V. GROUNDS

### III

We now apply these principles to the habeas petitions filed by Nettles and Santos.

### A

Nettles seeks two forms of relief.  First, he seeks expungement of the February 26, 2008 rules violation report for threatening to stab a corrections officer.  Second, he seeks restoration of the thirty days of post-conviction credit that were lost based on a finding that he was guilty of the alleged rules violation.  We must determine whether either of these forms of relief will "necessarily spell speedier release" from custody.  *See Skinner*, 131 S. Ct. at 1299 n.13.

### 1

In order to understand Nettles's arguments that both claims are cognizable in habeas, it is first necessary to review certain aspects of California's parole system.  If a prisoner, like Nettles, has been given a life sentence with the possibility of parole, the earliest date on which such a prisoner may be released on parole is termed the "minimum eligible parole date."  Cal. Code Regs. tit.15, § 2000(b)(67).  This date is set by statute, and the California Department of Corrections is responsible for calculating it.  *Id.* § 2400.

One year before a prisoner reaches the minimum eligible parole date, the Board (or a panel of two or more commissioners) meets with the inmate, and sets a parole

---

"the core of the criminal proceeding itself" and had to be brought in habeas.  131 S.Ct. at 1299 n.13 (quoting oral argument transcript).

release date "unless it determines that the gravity" of the prisoner's offenses "is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code § 3041(b); *see also* Cal. Code Regs. tit. 15, § 2281(b) (listing information considered in determining whether a prisoner is suitable for release on parole). If the Board decides not to set a parole release date, the Board will schedule the next hearing for a period ranging from three to fifteen years, depending on statutory criteria. Cal. Penal Code § 3041.5(b)(3).

If the Board determines that the prisoner is suitable for parole, it will calculate a parole date in the manner required by the regulations. Cal. Code Regs. tit. 15, §§ 2289, 2317. First, the Board calculates a base term, using a matrix set out in the regulations. *Id.* §§ 2282, 2403. Among other factors, the Board may consider post-conviction credit accrued by the prisoner for time served, but "[i]n no case may post conviction credit advance a release date earlier than the minimum eligible parole date." *Id.* § 2290(a). After the base term has been determined, the prisoner's post-conviction credits are subtracted to determine the adjusted term. *Id.* § 2411(a). If this calculation establishes that the prisoner has served time equal to or greater than the adjusted term, the prisoner is entitled to release. *Id.* § 2289.

2

Nettles argues that expunging the 2008 rules violation report from his record is reasonably likely to accelerate his release. He argues that under California law, the Board "shall normally set a parole release date" unless the Board determines that "the inmate constitutes a current threat to public safety." *See In re Lawrence*, 190 P.3d 535, 546, 553

22          NETTLES V. GROUNDS

(Cal. 2008) (internal quotation marks omitted). Nettles argues that without the 2008 rules violation on his record, he would be able to present the Board fifteen years free of any actions relating to drugs or violence, and this would have some effect in accelerating his release. While acknowledging that the 2009 hearing panel might not have found him eligible for parole, even without the 2008 rules violation report, Nettles claims that at a minimum, the Board would have scheduled the next parole suitability hearing at an earlier date, or that Nettles would be able to accelerate the next hearing due to a "change in circumstances." Cal. Penal Code § 3041.5(d). Further, Nettles claims that the existence of the 2008 rules violation report on his record will detract from the Board's consideration of his parole suitability for years to come. Because the expungement relief Nettles requests will prevent these roadblocks to parole, Nettles contends his claims are cognizable in habeas.

We reject these arguments, because the effect of an expungement of the 2008 rules violation report is too attenuated to meet the *Skinner* standard. While the 2008 rules violation report will likely have some effect on the Board's consideration, there is no basis for concluding that the expungement of this report from the record will "necessarily spell speedier release" for Nettles. *See Skinner*, 131 S. Ct. at 1299 n.13. Nor will it necessarily terminate Nettles's custody, accelerate the future date of his release, or reduce his level of custody. *See id.* The effect of a rules violation on parole suitability is a matter of state law or regulation, and, under California law, a rules violation is merely one factor the parole board considers to determine whether a prisoner "constitutes a current threat to public safety," *Lawrence*, 190 P.3d at 553; it is not determinative, *see* Cal. Code Regs. tit. 15, § 2281(b) (directing the parole board to consider "[a]ll

relevant, reliable information" in determining suitability for parole). Here, the Board considered a range of relevant factors bearing on Nettles's future dangerousness, including his inability to learn from prior imprisonments, his lack of insight and remorse regarding his crimes, and his argumentative and stubborn attitude. Even if successful, Nettles "will not necessarily shorten the length of his confinement" because "[t]he parole board will still have the authority to deny . . . parole on the basis of any of the grounds presently available to it in evaluating such a request." *See Ramirez*, 334 F.3d at 859 (first alteration in original) (internal quotation marks omitted). As *Close* pointed out, even when a challenge to prison disciplinary proceedings "*may* affect the duration of time to be served (by bearing on the award or revocation of good-time credits)," where "it is not necessarily so," a challenge to such proceedings "raise[s] no claim on which habeas relief could have been granted." 540 U.S. at 754–55 (emphasis added). Therefore, this claim is not cognizable in habeas.

Nettles also argues that a restoration of post-conviction credits would have an effect on the duration of his confinement. While he acknowledges that restoring the post-conviction credits would not impact his minimum eligible parole date, which had already passed at the time he was deprived of the credits, Nettles contends that restoration of the credits will reduce the term he must serve before being released, once the Board determines he is eligible for parole and sets a term for his release.

Again, we reject this argument. Although the loss of post-conviction credit could lead to a longer term under some circumstances, the effect in Nettles's case is far too attenuated to meet the standard set forth in *Skinner*. First, the

24                    NETTLES V. GROUNDS

Board has not yet found Nettles to be suitable for parole, and it is unknown whether the Board will do so at the next parole hearing. If Nettles is eventually found suitable for parole, and a term is calculated, a deprivation of post-conviction credits could affect his release date only if the base term exceeded the time already served. *See* Cal. Code Regs. tit. 15, § 2289. Without knowing how many years Nettles will serve before the Board finds him suitable for parole or the length of his base term, we cannot conclude that restoration of the lost good-time credits would *necessarily* affect the duration of Nettles's confinement if and when the Board finds him suitable for parole.

Because neither expungement of the 2008 rules violation report nor restoration of the lost good-time credits would necessarily accelerate the future date of Nettles's release from custody, we hold that his claim is not cognizable under the federal habeas statute. *See Skinner*, 131 S. Ct. at 1299 & n.13.

B

We next turn to Santos's claim seeking expungement of the gang validation from his record and release from the SHU to the general prison population. If successful, Santos's claim would result in immediate release from the SHU, but would not result in immediate release from prison.

We have previously held that "[h]abeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law." *Bostic*, 884 F.2d at 1269. The Seventh Circuit has similarly concluded:

NETTLES V. GROUNDS                                        25

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy.

*Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991). In reaching this conclusion, *Graham* distinguished challenges seeking release from one type of custody to another from cases challenging prison conditions. *See id.* (stating that if a prisoner is "seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.").

We are bound by our ruling in *Bostic*, because the Supreme Court's case law is not "clearly irreconcilable" with our earlier determination that we have habeas jurisdiction over a claim that would result in release from disciplinary segregation to the general prison population. *See Gammie*, 335 F.3d at 893. The Court has long indicated that a prisoner's claim for release from one form of custody to another, less restrictive form of custody, can be brought in a habeas petition. *See Skinner*, 131 S. Ct. at 1299 (suggesting that habeas was available where the relief sought would reduce the level of custody); *Preiser*, 411 U.S. at 486 (stating there is habeas jurisdiction for claims seeking release on parole, bail, or on one's own recognizance); *see also Garlotte*

26 NETTLES V. GROUNDS

*v. Fordice*, 515 U.S. 39, 47 (1995) (prisoner's claim seeking speedier release from imprisonment to parole was cognizable in habeas). And the Court has not directly addressed the question whether a challenge to the degree of constraints in prison (such as a release from administrative or disciplinary segregation) is a claim seeking release from custody, or merely a challenge to conditions of confinement. *See Close*, 540 U.S. at 751 n.1 (declining to rule on the question whether a prisoner might have a habeas claim to challenge "special disciplinary confinement for infraction of prison rules"); *see also Dotson*, 544 U.S. at 86 (Scalia, J. concurring) (suggesting that "permissible habeas relief" could include a "quantum change in the level of custody") (citing *Graham*, 922 F.2d at 381)). Accordingly, we remain bound by the determination in *Bostic* that a prisoner can seek expungement of an incident from his disciplinary record when that would lead to speedier release from disciplinary segregation.[10] *See Bostic*, 884 F.2d at 1269. As suggested in *Graham*, however, a prisoner who is not seeking a quantum change in the level of custody, such as release from disciplinary segregation to the general prison population, or release from prison on bond,

---

[10] After concluding it had no need to address the validity of an order releasing a prisoner from disciplinary segregation, *Griffin* nevertheless noted in passing that *Skinner* now precluded such an order from issuing in a habeas petition. *See Griffin*, 741 F.3d at 17–18 & nn. 14–15. While we agree with *Griffin*'s conclusion that *Skinner* precludes a prisoner from challenging conditions of confinement in habeas, we disagree with *Griffin*'s extension of this rule to preclude habeas challenges to quantum changes in levels of custody. Because *Griffin* uttered this overly restrictive gloss on *Skinner* "casually and without analysis," and "in passing without due consideration of the alternatives" as "a prelude to another legal issue that command[ed] the panel's full attention," it is not binding precedent in our circuit. *In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 737 F.3d 1262, 1268 n.8 (9th Cir. 2013); *see also In re Magnacom Wireless, LLC*, 503 F.3d 984, 993–94 (9th Cir. 2007).

NETTLES V. GROUNDS 27

parole, or probation, but is merely "seeking a different program or location or environment" even if "the program or location or environment that he is challenging is more restrictive than the alternative that he seeks," does not meet the requirement in *Skinner*.[11] *See Graham*, 922 F.2d at 381.

Here, Santos claims that the process by which he was validated as a gang member violated his due process rights, and, as a result of this unconstitutional validation, he was confined in the SHU, which is a disciplinary segregation facility imposing a greater quantum of custody. The remedy Santos seeks of expungement of the gang validation from his record and release from the SHU to the general prison population, "can fairly be described as a quantum change in the level of custody." *See id.* at 381. Additionally, success on his claim would result in his immediate release from the SHU to the general prison population. His claim that he has

---

[11] Prior to *Skinner*, there was a circuit split over "the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement." *Spencer v. Haynes*, 774 F.3d 467, 470–71 & n.6 (8th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979)). As explained in *Spencer*, the D.C., Second, Third, Fourth, and Sixth Circuits "firmly [stood] in the camp of allowing conditions-of-confinement claims to be brought in the habeas corpus context," whereas the Eighth, Fifth, Seventh, Ninth, and Tenth Circuits held that habeas petitions are not "appropriate procedural vehicles by which to remedy conditions-of-confinement claims." *Id. Skinner* goes a long way towards resolving this circuit split by holding that relief is available to a prisoner under the federal habeas statute only if success on the claim would "necessarily spell speedier release from custody," including termination of custody, acceleration of the future date of release from custody, or reduction of the level of custody. *See Griffin*, 741 F.3d at 17 & n.15. *But cf. Aamer v. Obama*, 742 F.3d 1023, 1026 (D.C. Cir. 2014) (concluding, after *Skinner* was decided but without discussing it, that challenges to the conditions of confinement "properly sound in habeas corpus").

28                NETTLES V. GROUNDS

been subjected to greater restrictions of his liberty without due process of law is therefore properly brought as a petition for a writ of habeas corpus.[12]  *See Skinner*, 131 S. Ct. at 1299 & n.13; *Bostic*, 884 F.2d at 1269.  Because the district court erred in dismissing Santos's petition, we remand to the district court for further proceedings on the merits of Santos's claim.

**AFFIRMED IN APPEAL NO. 12-16935, REVERSED AND REMANDED IN APPEAL NO. 13-15050.**

MURGUIA, Circuit Judge, concurring in part, and dissenting in part:

I disagree with the majority that the Supreme Court expressly "rul[ed] on the outer limits of habeas jurisdiction" in *Skinner v. Switzer*, 131 S. Ct. 1289 (2011).  *See* Majority 17.  *Skinner* addressed whether a prisoner's civil rights action could proceed under 42 U.S.C. § 1983, and did not involve a federal habeas petitioner, much less the scope of relief available under 28 U.S.C. § 2254.  *See Skinner*, 131 S. Ct. at 1297 ("We take up here *only* the questions whether there is federal-court subject-matter jurisdiction over Skinner's complaint, and whether the claim he presses is cognizable

---

[12] Because we conclude that Santos's claim that his gang validation resulted in an increased level of custody is sufficient to render the claim cognizable under the federal habeas statute, we need not address Santos's additional argument that his claim is cognizable because his gang validation also effectively deprived him of any meaningful opportunity for release on parole and resulted in the loss of the right to earn good-time credit.

under § 1983." (emphasis added)). To accept the majority's strained reading of *Skinner* we have to believe that the Supreme Court, after leaving the issue open for over forty years,[1] conclusively determined the outer boundaries of habeas jurisdiction in a footnote of a case that did not involve a habeas petition. We likewise must ignore the Court's explicit limitation that its decision was not intended to forge new law, *see Skinner*, 131 S. Ct. at 1299 n.13 (stating that *Skinner* should not be interpreted to "mov[e] the line" drawn by the Court's earlier decisions) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 84 (2005)), and accept that the Supreme Court implemented this drastic change to habeas jurisdiction through an ambiguous statement rather than by clear direction.

Given these hurdles, I cannot agree with the majority that *Skinner*'s holding is clearly irreconcilable with our court's decisions in *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) (habeas jurisdiction is proper when a prisoner seeks expungement of a disciplinary finding if "expungement is likely to accelerate the prisoner's eligibility for parole"), and *Docken v. Chase*, 393 F.3d 1024, 1031 (9th Cir. 2004) (habeas jurisdiction is proper when a prisoner's challenge to parole procedures "*could* potentially affect the duration of . . . confinement") (emphasis in original)). Even if the majority is correct that the footnote signals an answer to the issue the Supreme Court left open in *Preiser*, the majority is not free to disregard binding case law absent much clearer direction from the Supreme Court. *See United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013). Because the majority's

---

[1] *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (declining to address the "limits of habeas corpus as an alternative remedy to a proper action under [42 U.S.C.] § 1983").

holding exceeds the scope of authority granted to a three judge panel of our court, I must dissent.

**I**

By concluding that *Bostic* and *Docken* are clearly irreconcilable with *Skinner*, the majority fails to apply the requisite level of deference to our binding precedent. "As a three-judge panel of this circuit, we are bound by prior panel decisions . . . and can only reexamine them when their 'reasoning or theory' of that authority is 'clearly irreconcilable' with the reasoning or theory of intervening higher authority." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). There is no question that "clearly irreconcilable" is a "high standard." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (internal quotation marks and citation omitted). Intervening higher authority is not clearly irreconcilable simply because there exists "'some tension' between the intervening higher authority and prior circuit precedent" or because "the intervening higher authority . . . 'cast[s] doubt' on the prior circuit precedent." *Lair*, 697 F.3d at 1207 (internal citations omitted). Indeed, even "'strong[] signals'" from the Supreme Court "aren't enough" for a "three-judge panel to overrule existing circuit precedent." *Green*, 722 F.3d at 1150 (quoting *Miller*, 335 F.3d at 900).

In *Skinner*, a state prisoner filed a § 1983 action alleging that the State's refusal to release certain biological evidence for DNA testing violated his due process rights. 131 S. Ct. at 1296. The State sought dismissal of Skinner's complaint on the basis that Skinner was using his § 1983 action "as a platform for attacking his conviction"—a complaint the State

argued could "be pursued, if at all, in an application for habeas corpus." *Id.* at 1299. The Supreme Court narrowly defined the issue implicated in *Skinner*, stating that the Court was addressing only whether Skinner's claim could proceed under § 1983, not whether the same claim hypothetically could be brought in a habeas petition. *See* 131 S. Ct. at 1297. Answering the narrow question before it, the Supreme Court held that Skinner's claim was cognizable under § 1983 because the claim did not implicate core habeas jurisdiction. *Id.* at 1298. The Court reasoned that "[s]uccess in [Skinner's] suit for DNA testing would not 'necessarily imply' the invalidity of his conviction" because a conclusion that DNA testing would ultimately prove Skinner's innocence was anything but certain. *Id.* This holding reiterated what the Court has previously held: "core" habeas claims—claims that necessarily spell immediate or speedier release from confinement—*must* be brought in habeas, while non-core claims *may* be brought under § 1983. *See Dotson*, 544 U.S. at 81–82 (surveying governing Supreme Court authority).

The majority reads *Skinner* differently, concluding that a single sentence of dicta in footnote 13 forecloses habeas jurisdiction for all non-core claims, including claims that closely relate to core habeas proceedings—*i.e.*, claims that, if successful, will not necessarily result in speedier release but could affect the duration of confinement. *See, e.g.*, *Bostic*, 884 F.2d at 1269 (expungement of a disciplinary finding if "expungement is likely to accelerate the prisoner's eligibility for parole"); *Docken* 393 F.3d at 1031 (when challenged parole procedures "could potentially affect the duration of [the prisoner's] confinement")).

The majority's strained reading of *Skinner* hinges on the following sentence in footnote 13: *"[Wilkinson v.] Dotson*

32          NETTLES V. GROUNDS

declared . . . in no uncertain terms, that when a prisoner's claim would not 'necessarily spell speedier release,' that claim does not lie at 'the core of habeas corpus,' and may be brought, if at all, under § 1983."[2] *Skinner*, 131 S. Ct. at 1297 n.13 (quoting *Dotson*, 544 U.S. at 84). Reading this statement in isolation, the majority creates what it coins "the *Skinner* standard" and determines that "we are bound by the Court's express statement in *Skinner* that relief is available to a prisoner under the federal habeas statute only if success on the claim would 'necessarily spell speedier release' from custody." In doing so, the majority abrogates our prior decisions in *Bostic* and *Docken*, where our court held that a

---

[2] Footnote 13, in its entirety, reads as follows:

> Unlike the parole determinations at issue in *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), Switzer urges, claims like Skinner's require inquiry into the State's proof at trial and therefore lie at "the core of the criminal proceeding itself." Tr. of Oral 41; *see id.*, at 33–34. *Dotson* declared, however, in no uncertain terms, that when a prisoner's claim would not "necessarily spell speedier release," that claim does not lie at "the core of habeas corpus," and may be brought, if at all, under § 1983. 544 U.S., at 82, 125 S.Ct. 1242 (majority opinion) (internal quotation marks omitted); *see id.*, at 85–86, 125 S.Ct. 1242 (Scalia, J., concurring). Whatever might be said of Switzer's argument were we to recast our doctrine, Switzer's position cannot be reconciled with the line our precedent currently draws. Nor can the dissent's advocacy of a "retur[n] to first principles." *Post*, at 1303–1304. Given the importance of providing clear guidance to the lower courts, "we again see no reason for moving the line our cases draw." *Dotson*, 544 U.S., at 84, 125 S.Ct. 1242.

*Skinner*, 131 S. Ct. at 1299 n.13.

prisoner's claims are properly brought under § 2254 so long as the claim, if successful, would likely accelerate parole eligibility, *Bostic*, 884 F.2d at 1269, or "*could* potentially affect the duration of . . . confinement." *Docken*, 393 F.3d at 1031. I believe the majority is wrong and has exceeded its authority.[3]

---

[3] Notably, the majority justifies its interpretation of *Skinner* by arguing that its opinion is "consistent with the interpretation adopted by two prior panels." Majority at 18 n.8 (citing *Blair*, 645 F.3d at 1157–58; *Griffin*, 741 F.3d at 17 & n.15). The majority's reliance on these cases is curious, and most certainly misplaced, particularly because *Griffin*'s brief mention of habeas jurisdiction appears to conflict with the majority's holding in Santos's appeal. *Griffin* involved a California state prisoner who, like Santos, was a validated gang member who challenged his placement in the prison's segregated security housing unit. 741 F.3d at 11. In a 2006 order, the district court granted Griffin's habeas petition and ordered that he be released from segregated housing. *Id.* at 14. The order was too late; Griffin had been charged in a federal RICO case and was in federal, not state, custody. *Id.* Griffin was subsequently transferred back to state prison and he sought enforcement of the 2006 order. "Procedurally," the case before this Court was "a mess." *Id.* at 17. Relevant here is the *Griffin* panel's dicta involving the 2006 order, where the panel stated that although the Ninth Circuit had previously held that such orders could issue on habeas, "the Supreme Court has since held otherwise." *Id.* at 17 & n.15 (citing *Skinner*, 131 S.Ct. at 1299 n.13). Here, the majority contends its interpretation of *Skinner* "is consistent" with *Griffin*'s, but the majority's holding in *Santos*, where the petitioner seeks relief identical to the relief issued in the 2006 order, is in direct conflict with *Griffin*'s dicta. Majority at 25 ("The Court has long indicated that a prisoner's claim for release from one form of custody to another, less restrictive form of custody, can be brought in a habeas petition."); *id.* at 27–28 (Santos's "claim that he has been subjected to greater restrictions of his liberty without due process of law is therefore properly brought as a petition for a writ of habeas corpus.").

The majority's reliance on *Blair* is no more compelling. In *Blair*, a habeas petitioner argued that his right to due process was violated because the California Supreme Court was taking too long to resolve his direct

34                          NETTLES V. GROUNDS

To begin with, the "express statement" on which the majority relies is by no means a *clear* statement of intent by the Supreme Court. The sentence states that the Supreme Court's decision in *Dotson* "declared . . . in no uncertain terms" that only core habeas claims can be pursued under § 2254. This statement, however, is inherently ambiguous given that nothing in *Dotson*'s holding or reasoning supports the legal conclusion. As in *Skinner*, *Dotson* involved only whether prisoners seeking relief under § 1983 could pursue those claims in a civil rights action or, the corollary, whether the prisoner's claims implicated "core" habeas jurisdiction and were therefore *Heck*-barred. *See* 544 U.S. at 82–84 (noting prisoners can pursue relief under § 1983 without exhausting habeas remedy when success in the suit will not necessarily shorten the prisoner's sentence). The Court in *Dotson* held that the prisoners' claims—which alleged that the state's retroactive application of harsher parole guidelines violated the Ex Post Facto clause—could proceed under

---

appeal. 645 F.3d at 1153. By the time the claim reached the Ninth Circuit, the California Supreme Court had already affirmed the petitioner's direct appeal on the merits, prompting the panel in *Blair* to dismiss the claim as moot. *Id.* The panel's mootness holding renders its subsequent discussion of habeas jurisdiction an advisory opinion. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *see also U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 507 (6th Cir. 2007).

Materially, in their brief discussions of habeas jurisdiction, *Blair* and *Griffin* did not cite to a single Ninth Circuit habeas case, much less decide that *Bostic* and *Docken* are clearly irreconcilable with *Skinner*. The majority exceeds its authority by reaching this conclusion today. *See Green*, 722 F.3d at 1150.

§ 1983. Nothing in the Court's decision mandated that such claims be brought in a civil rights action. *Id.* Despite the majority relying entirely on dicta quoting the legal principle announced in *Dotson*, the majority is notably silent about the fact that *Dotson* itself does not support the majority's holding.

There are several additional reasons that undercut the majority's conclusion that *Skinner* redefined habeas jurisdiction. The issue in *Skinner* involved "only . . . whether the claim [Skinner] presses is cognizable under § 1983," and the case did not involve a petition for writ of habeas corpus under § 2254, much less implicate the outer bounds of habeas jurisdiction. *See* 131 S. Ct. at 1297. In fact, despite many opportunities to address this issue, the Supreme Court has notably refrained from defining the scope of habeas jurisdiction for over four decades. *See Preiser*, 411 U.S. at 500. Ironically, the majority's conclusion that *Skinner* finally answers this open question conflicts with the very footnote on which the majority's holding relies. The footnote expressly cautions against reading *Skinner* to "mov[e] the line" drawn by the Court's earlier decisions. 131 S. Ct. at 1299 n.13 ("Given the importance of providing clear guidance to the lower courts, 'we again see no reason for moving the line our cases draw.'" (quoting *Dotson*, 544 U.S. at 84)).

Given the narrow issue before the Court in *Skinner*, and the Court's explicit limitation in footnote 13 that its decision was not intended to forge new law, I cannot agree with the

36          NETTLES V. GROUNDS

majority that the ambiguous footnote in *Skinner* mandates a departure from our case law.[4]

## II

We review de novo a district court's decision to deny a petition for habeas corpus. *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010). Because *Skinner* does not abrogate our case law defining the scope of habeas jurisdiction, these consolidated appeals are governed by the law of this circuit. With respect to Matta Juan Santos's appeal, the majority agrees that *Skinner* "is not 'clearly irreconcilable' with our earlier determination that we have habeas jurisdiction over a claim that would result in release from disciplinary segregation to the general prison population." Majority at 25. I therefore concur in Section III.B. of the majority opinion, which reverses the district court's dismissal for lack of jurisdiction and remands for the district court to consider the merits of Santos's habeas petition. Because I disagree that

---

[4] To support its holding, the majority cites a number of pragmatic reasons for adopting its interpretation of *Skinner*. For example, the majority contends that its holding "not only provides guidance to prisoners regarding the correct form of action for their claims, but also resolves much of the understandable confusion of prison officials regarding which prisoner claims are cognizable in habeas." Majority at 19 n.9. I agree that the majority's holding draws a clear distinction between habeas jurisdiction and jurisdiction under § 1983 that will be easier to implement than our current jurisprudence. But no matter how practical the majority's rule may be, and regardless of whether the Supreme Court will someday agree with the majority, the single sentence of dicta in *Skinner* does not give a three-judge panel authority to overrule the law that binds us now. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (court of appeals "was correct" in adhering to binding precedent despite recognizing an "infirm[]" Supreme Court decision that the court of appeals rightly predicted would be overturned by the Supreme Court).

the majority's newly created "*Skinner* standard" governs Nettles's appeal, I write separately and evaluate Nettles's claim under our court's established authority. Applying controlling circuit authority, I would reverse the district court's order of dismissal because Nettles has sufficiently alleged a claim cognizable under § 2254.

## A

Damous Nettles, who is a California state prisoner serving an indeterminate life term for the heinous crimes described at length in the majority opinion, majority at 5–8, challenges a disciplinary finding in his prison record, which concluded that Nettles threatened to stab a correctional officer on February 26, 2008. In his federal habeas petition, Nettles argues that he was denied the opportunity to defend against the allegation because prison officials falsified evidence and refused to allow Nettles to present testimony from exculpatory witnesses, in violation of his constitutional rights. As a result of this disciplinary finding, Nettles was placed in segregated housing for four months, and he lost thirty days of post-conviction credit.

The February 26, 2008 violation, and others, was considered by the parole board a year later, on July 30, 2009, when the board convened for a parole suitability hearing and determined that Nettles was not suitable for parole because he "still pose[d] an unreasonable risk of danger if released from prison." Under California law, if a prisoner is deemed unsuitable for parole, the board has discretion to determine when to schedule the next hearing—either 3, 5, 7, 10, or 15 years after the hearing at which parole is denied. Cal. Penal Code § 3041.5(b)(3). Without analysis, the board set Nettles' next parole hearing for 2019—ten years later.

In his federal habeas petition, Nettles asserts that "before the 2008 [violation] for threatening an officer, Nettles had gone a full decade without any disciplinary action for drugs or violence; if he is able to expunge the [violation], he would take to the Board today fifteen years free of any actions relating to drugs or violence." He asserts that because the parole board must consider serious rule violations as a factor tending to show the prisoner is unsuitable for parole, Cal. Code Regs. tit. 15, §2402(c)(6), expungement of his vile 2008 offense would result in a "significant change in evidence probative of his current dangerousness." Nettles also contends that expungement will likely advance his next parole hearing because he will be able to show a "change in circumstances or new information" related to his current dangerousness. *See* Cal. Pen. Code § 3041.5(d)(1).

Nettles could be right; he could also be wrong. But, adhering to our binding precedent, the question before us is not what the parole board will ultimately decide should Nettles successfully expunge his 2008 rules violation or what we would do if we were sitting as parole commissioners. Indeed, "[w]e are ill-inclined . . . to substitute our substantive analysis of the likely outcome of [Nettles]' parole hearings for that of the Board." *Docken*, 393 F.3d at 1031. The question before us is only whether Nettles' claim, if successful, "*could* potentially affect the duration of . . . confinement." *Id.* (emphasis in original). Although Nettles' 2008 disciplinary violation for threatening to stab a prison official was not the only, or even the primary, reason the board denied Nettles parole, expungement of the offense nonetheless could potentially affect the length of his confinement. Nettles does not allege that expungement would have caused the board to grant him parole in 2009. Rather, he contends that expunging the offense will likely

NETTLES V. GROUNDS                              39

accelerate his next parole hearing by changing the circumstances relevant to his current dangerousness; instead of his prison record reflecting a threat to murder a correctional officer in 2008, Nettles' record will demonstrate that he has not been involved in a drug or violent offense in fifteen years. Under these circumstances, "[i]t is certainly at least possible that [Nettles'] suit would impact the duration of his confinement," if the 2008 violation is expunged from his record. *See Docken*, 393 F.3d at 1031. Because Nettles has established a sufficient link between success in his claim and the duration of his confinement, I would reverse the district court's order of dismissal and remand for the court to address the merits of Nettles' claim in the first instance.

~

For the foregoing reasons, I respectfully disagree with the majority that the footnote of dicta in *Skinner* redefines the scope of habeas jurisdiction and abrogates our prior decisions in *Bostic* and *Docken*. Although I agree with the majority's determination that Santos's claim may be brought under § 2254, I disagree that Nettles petition fails to assert a cognizable habeas claim. I would therefore reverse and remand in both cases because Santos and Nettles have each asserted a cognizable habeas claim under the law of our circuit. *See Docken*, 393 F.3d at 1031. I believe the majority's conclusion to the contrary exceeds the authority granted to a three judge panel of this Court.